**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

PHYLLIS A. ASHER,

      Claimant,

v.                                                            Case No. 8:26-cv-00895

MORNING LAW GROUP, P.C.,

      Respondent.

## COMPLAINT

**NOW COMES** PHYLLIS A. ASHER **(**"Claimant"), by and through the undersigned counsel, complaining of MORNING LAW GROUP, P.C. ("Respondent"), as follows:

## NATURE OF ACTION

1.      Claimant brings this action seeking redress for violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq*., the Florida Credit Services Organization Act ("FCSOA"), pursuant to Fla. Stat. § 817.700 *et seq*., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), pursuant to Fla. Stat. § 501.201 *et seq.*, breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and legal malpractice.

## JURISDICTION AND VENUE

2.      The Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

4.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5.    Claimant is a natural person and consumer, over 18 years-of-age, residing in Sarasota, Florida.

6.    Respondent is a company that purports to help consumers resolve their debt and improve their credit scores.

## FACTUAL ALLEGATIONS

7.    In October 2024, Claimant was facing financial difficulties and had a number of debts prompting her to begin looking for companies who may be able to assist her in maintaining her creditworthiness and resolving her financial obligations.

8.    Subsequently thereafter, Claimant discovered Respondent through its representation that it could help consumers resolve their financial obligations by negotiating with creditors to reduce their outstanding debts and improving their credit.

9.    Claimant spoke with Respondent and Respondent's agent represented to Claimant that it would be able to: (1) resolve Claimant's financial obligations for a significant discount by negotiating with Claimant's creditors; and (2) improve Claimant's credit scores.

10.    Respondent further represented to Claimant that all she would need to do is make monthly payments over a certain period of time and that Respondent would utilize the payments to expeditiously resolve Claimant's enrolled debts.

11.    On or around October 11, 2024, having relied on Respondent's representations, Claimant formally enrolled various debts into Respondent's debt settlement programs by entering into a contract with Respondent.

12.    Specifically, Claimant enrolled a total debt amount of approximately $23,545.

13.    Pursuant to the contract, Claimant was obligated to make monthly payments of approximately $250.

14.    Claimant proceeded to make her monthly payments to Respondent in a timely manner.

15.    During the enrollment period, Claimant was repeatedly informed that Respondent was actively communicating with her enrolled creditors to settle outstanding debts.

16.    Despite Respondent's assurances, Respondent failed to resolve Claimant's debts as expeditiously as Respondent represented it would.

17.    Despite Respondent's representations, Claimant's credit score did not improve.

18.    Claimant signed up for Respondent's debt settlement and credit improvement services based on its representations that it would negotiate and settle her outstanding debts and remove settled accounts from her consumer credit reports.

19.    Throughout its dealings with Claimant, Respondent deceptively and misleadingly strung Claimant along, telling her what she wanted to hear in order for her to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Claimant's continued participation in Respondent's debt settlement program.

20.    Furthermore, Respondent repeatedly informed Claimant that it was working on negotiating settlements with her creditors on her behalf.

21.    However, Respondent chronically failed to engage the vast majority of Claimant's creditors in settlement discussions, which resulted in Claimant's creditors hounding Claimant for payments.

22.     Despite Claimant paying a significant sum into Respondent's program, Respondent failed to meaningfully (1) engage Claimant's creditors in settlement discussion, (2) resolve Claimant's debts, or (3) improve Claimant's credit score.

23.     As a result of Respondent's inaction, Claimant's creditors continued to hound Claimant through harassing collection calls and other collection activity.

24.     After over a year of faithfully making her payments into Respondent's debt settlement program, Claimant was shocked to learn that the Respondent had failed to resolve her enrolled accounts.

25.     Claimant grew more frustrated upon discovering that Respondent had allocated a substantial portion of Claimant's monthly payments toward its own fees, rather than using those funds to settle Claimant's enrolled accounts.

26.      As a result of Respondent's inaction, Claimant's credit score has decreased significantly despite Respondent's assurances that Claimant's credit score would improve during Respondent's program.

27.     Moreover, as a result of Respondent's inaction, Claimant was sued by some of the creditors that she enrolled in Respondent's program, to which Claimant was forced to represent herself.

28.     Claimant suffered significant damages as result of Respondent's misrepresentations and omissions, including: financial losses, emotional distress, aggravation, mental anguish, decreased credit score.

29.     Simply put, Claimant found herself in a much worse financial position after enrolling in Respondent's "debt settlement" program.

### COUNT I – VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

30.    Claimant repeats and realleges all preceding paragraphs as though fully set forth herein.

31.    The transactions giving rise to these claims constitute "trade or commerce" defined by Fla. Stat. § 501.203(8).

32.    Pursuant to the FDUTPA § 501.204(1), "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

33.    The provisions of the FDUTPA "shall be construed liberally to . . . protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *See* Fla. Stat. § 501.202(2).

34.    Violations of the FDUTPA further consider the rules promulgated in connection with the Federal Trade Commission Act, the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts, as well as any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices. *See* Fla. Stat. § 501.203.

35.    Respondent violated the FDUTPA by, *inter alia*, unfairly and deceptively (1) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (2) putting its financial interests ahead of Claimant's interests; (3) representing to Claimant that its program could improve Claimant's credit when it had knowledge that its program would destroy Claimant's credit; (4) charging settlement fees that are not authorized by contract and/or statute; (5) withdrawing funds from Claimant's designated savings account without Claimant's authorization; (6) misleading Claimant into believing she had full control over

Claimant's designated savings account; and (6) failing to represent Claimant in her suits brought by creditors.

36.     Respondent's conduct was unfair and deceptive because Respondent misled Claimant into trusting that Respondent would act in her best interests and resolve her debts in a diligent manner.

37.     As set forth above, Claimant suffered damages as a result of Respondent's conduct.

**WHEREFORE**, Claimant respectfully requests the following relief:

a.     A judgment in Claimant's favor and against Respondent;

b.     An award of actual damages in an amount to be determined at evidentiary hearing pursuant to the Fla. Stat. § 501.211(2);

c.     An award of punitive damages;

d.     An award of Claimant's costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.2105;

e.     Award any other relief this Arbitrator deems equitable and just.

### COUNT II – BREACH OF CONTRACT

38.     Claimant repeats and realleges all preceding paragraphs as though fully set forth herein.

39.     The contract for debt settlement services between Claimant and Respondent is a valid and enforceable contract.

40.     The elements of breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.

41.     Respondent breached its contract with Claimant by, *inter alia*, (1) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (2) putting its financial interests ahead of Claimant's interests; (3) charging settlement fees that are not authorized by contract and/or statute; (4) withdrawing funds from Claimant's designated savings account without Claimant's authorization; (5) taking full control over Claimant's designated savings account; and (6) failing to represent Claimant in her suits brought by creditors. .

42.     The aforementioned conduct further breached the implied covenant of good faith and fair dealing.

43.     As set forth above, Claimant suffered damages as a result of Respondent's breach of contract.

**WHEREFORE**, Claimant respectfully the following relief:

a.      Declaring that Respondent breached the underlying contract;

b.      Awarding Claimant actual damages;

c.      Awarding Claimant of punitive damages; and,

d.      Awarding any other relief as the Arbitrator deems just and appropriate.

### COUNT IV – BREACH OF FIDUCIARY DUTY

44.     Claimant restates and realleges all previous paragraphs as though fully set forth herein.

45.     Respondent owed Claimant a fiduciary duty arising out of the nature of their relationship.

46.     Respondent owed Claimant a fiduciary duty because Claimant reposed a special confidence in Respondent and Respondent was bound to act in good faith and with due regard of Claimant.

47.     Specifically, Claimant entrusted Respondent with her money and to use her money in a responsible manner to settle her debts.

48.     Respondent breached its fiduciary duty to Claimant by, *inter alia,* (1) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (2) pocketing unearned fees and fees not authorized by the contract and/or statute; (3) putting its financial interests ahead of the interests of Claimant; (4) withdrawing funds from Claimant's designated savings' account without Claimant's authorization; and (5) taking full control over Claimant's designated savings account after misleading into believing that she had full control over her designated savings account.

49.     As set forth above, Claimant suffered damages as a result of Respondent's conduct.

**WHEREFORE**, Claimant respectfully requests the following relief:

a.      A judgment in Claimant's favor for breach of fiduciary duty

b.      Awarding Claimant actual damages;

c.      Award Claimant punitive damages;

d.      Award Claimant reasonable attorney's fees and costs;

e.      Awarding any other relief as the Arbitrator deems just and appropriate.

### COUNT III – FRAUD

50.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

51.     The elements of fraud are: (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party. *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

52.     Defendant committed fraud by falsely representing to Plaintiffs that it would (1) expeditiously resolve her debts; (2) improve her credit scores; and (3) provide legal assistance in any suit brought by her creditors.

53.     Defendant knew that its debt resolution program cannot possibly improve Plaintiffs' credit scores as it requires Plaintiffs to stop making payments to their creditors, which will in turn decrease Plaintiffs' credit scores.

54.     Plaintiffs detrimentally relied on the representations by enrolling in Defendant's debt resolution/credit improvement program and making payments into the program.

55.     Despite making payments into Defendant's debt resolution/credit improvement program, Defendant failed to settle any of Plaintiffs' debts or improve Plaintiffs' credit scores.

56.     As alleged above, Plaintiffs were severely harmed by Defendant's actions and inaction.

**WHEREFORE**, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor as follows:

a.     A judgment in Plaintiffs' favor for fraud;

b.     Awarding Plaintiffs actual and punitive damages, in an amount to be determined at trial;

c.     Awarding Plaintiffs their reasonable attorney's fees and costs; and

d.    Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT IV –NEGLIGENT MISREPRESENTATION

57.    Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

58.    The tort of negligent misrepresentation has four elements: (1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend that the representation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation *Wallerstein v. Hosp. Corp. of Am.,* 573 So. 2d 9, 10 (Fla. Dist. Ct. App. 1990).

59.    Defendant made negligent misrepresentations through its conduct in promising Plaintiffs that it would (1) promptly communicate with Plaintiffs' enrolled creditors, (2) efficiently settle Plaintiffs' enrolled debts, (3) improve Plaintiffs' credit score; and (4) provide legal assistance in any suit brought by her creditors.

60.    Further, Defendant implicitly and/or explicitly represented to Plaintiffs that its services would improve Plaintiffs' credit scores when it knew that Plaintiffs' credit scores would decrease due to missed payments.

61.    Plaintiffs heavily relied on all of the aforementioned false statements to their detriment.

62.    As alleged above, Plaintiffs were severely harmed by Defendant's actions and inaction.

**WHEREFORE**, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor as follows:

e.      A judgment in Plaintiffs' favor for negligent misrepresentation;

f.      Awarding Plaintiffs actual and punitive damages, in an amount to be determined at trial;

g.      Awarding Plaintiffs' reasonable attorney's fees and costs; and

h.      Awarding any other relief as this Honorable Court deems just and appropriate.

<u>**COUNT V – LEGAL MALPRACTICE**</u>

63.      Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

64.      In Florida, to establish a cause of action for legal malpractice based on negligence, a plaintiff must prove the following elements:  (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence resulted in and was the proximate cause of loss to the client." *Tarleton v. Arnstein & Lehr,* 719 So. 2d 325, 328 (Fla. Dist. Ct. App. 1998).

65.      Plaintiffs and Defendant entered into an attorney-client relationship on October 8, 2021, upon Plaintiffs executing a Client Retainer Agreement with Defendant in which Defendant agreed to provide legal representation and debt resolution services to Plaintiffs.

66.      Defendant owed a professional duty to Plaintiffs as a result of this contractual relationship, specifically to negotiate with Plaintiffs' creditors and provide other legal services.

67.      Defendant breached its duties as set forth in the Client Retainer Agreement by, *inter alia*, (1) failing to promptly communicate with Plaintiffs' enrolled creditors, (2) failing to resolve

*any* of Plaintiffs' enrolled debts, and (3) falsely representing to Plaintiffs that it would provide legal assistance in any suit brought by her creditors

68. As set forth above, Defendant failed to resolve any of Plaintiffs' debts despite having adequate funds to resolve Plaintiffs' debts.

69. As set forth above, Plaintiffs suffered damages as a result of Defendant's legal malpractice.

**WHEREFORE**, Plaintiffs, respectfully requests that this Honorable Court enter judgment in their favor as follows:

a. A judgment in favor of Plaintiffs for legal malpractice;

b. Awarding Plaintiffs actual damages;

c. Award Plaintiffs punitive damages; and,

d. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT V – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

70. Claimant repeats and realleges all preceding paragraphs as though fully set forth herein.

71. Claimant is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

72. Respondent is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

a. **Violations of CROA § 1679b(a)(3) and (a)(4)**

73. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

74. Respondent violated of §§ 1679b(a)(3) and (4) by, *inter alia*, (1) misrepresenting the efficacy of its program; (2) misrepresenting that its program could improve Claimant's credit; and (3) misleading Claimant into believing that she had full control over her designated savings account.

**b.      Violations of CROA § 1679b(b)**

75. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

76. Respondent violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed.

**c.      Violations of CROA § 1679d**

77. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract.

See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

78. Respondent violated § 1692d(b)(4) of the CROA through its failure to contain the required disclosure in bold face type in immediate proximity for the place reserved for Claimant's signatures on the contract.

79. As alleged above, Claimant was harmed by Respondent's conduct.

**WHEREFORE**, Claimant respectfully requests the following relief:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Claimant actual damages, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Claimant punitive damages, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Claimant costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and,

e. Awarding any other relief as the Arbitrator deems just and appropriate

### COUNT VI - VIOLATIONS OF THE FLORIDA CREDIT SERVICES ORGANIZATIONS ACT

80. Claimant repeats and realleges all preceding paragraphs as though fully set forth herein.

81. Claimant is a "buyer" as defined by Fla. Stat. § 817.7001(1).

82. Respondent is a "credit service organization" as defined by Fla. Stat. § 817.7001(2)(a).

a. **Violations of FCSOA § 817.7005**

83.     The FCSOA, pursuant to Fla. Stat. § 817.7005, provides a list of prohibited conduct for credit services organizations.

84.     Pursuant to Fla. Stat. § 817.7005(1), a credit service organization must not charge or receive any money or other consideration prior to full and complete performance of its services, unless it has maintained a surety bond with the state, in which case the sums paid must be retained until full performance of the services are rendered.

85.     Respondent violated Fla. Stat. § 817.7005(a) by charging Claimant money prior to *fully* resolving all of Claimant's enrolled debt.

86.     Respondent violated Fla. Stat. 817.7005(1) by failing to obtain the requisite surety bond of $10,000 to charge fees prior to the completion of its services.

87.     Pursuant to Fla. Stat. § 817.7005(4), a credit service organization cannot "[m]ake or use any false or misleading representations or omit any material fact in the offer or sale of the services of a credit service organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit service organization, notwithstanding the absence of reliance by the buyer."

88.     Respondent violated Fla. Stat. § 817.7005(4) by, inter alia, (1) falsely representing to Claimant that its program could improve Claimant's credit; (2) misrepresenting the efficacy of its services; (3) misleading Claimant into believing she would have full control over her designated savings account; and (4) falsely representing to provide legal assistance in any suit brought by Claimant's creditors.

**b.     Violations of FCSOA § 817.704**

89.    The FCSOA, pursuant to Fla. Stat. § 817.704(1), outlines what must be included in a contract between a credit service organization and a consumer, including "[a] conspicuous statement in boldfaced type, in immediate proximity to space reserved for the signature of the buyer, as follows: 'You, the buyer, may cancel this contract at any time prior to midnight of the fifth day after the date of the transaction." Fla. Stat. § 817.704(1)(a). Further, pursuant to Fla. Stat. § 817.704(2), the contract must be accompanied by a notice of the right to cancel which similarly outlines the required Florida five-day window.

90.    Respondent violated §§ 817.704(1)(a) & (2) through its failure to properly provide the length of time for cancellation as required by Florida law.

91.    As alleged above, Claimant was harmed by Respondent's conduct.

**WHEREFORE**, Claimant respectfully requests the following relief:

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.    Awarding Claimant actual damages;

c.    Awarding Claimant punitive damages;

d.    Awarding Claimant's costs and reasonable attorney fees; and,

e.    Awarding any other relief as this Arbitrator deems just and appropriate.


## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.


Dated: March 30, 2026                                        Respectfully submitted,

                                                                        */s/ Maxwell W. Brooks*
                                                                        Maxwell W. Brooks, Esq.

Florida Bar No. 1040947
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: (630) 575-8181 x 134
mbrooks@atlaslawcenter.com
*Counsel for Plaintiff*